320 So.2d 291 (1975)
STATE of Louisiana ex rel. William J. GUSTE, Jr., Attorney General
v.
The AUDUBON PARK COMMISSION and the City of New Orleans.
Walter CHAPPELL, III and Vera Bisso
v.
The AUDUBON PARK COMMISSION, through its President, Clayton Nairne, and the City of New Orleans, through its Mayor, Moon Landrieu.
Nos. 7228, 7289.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1975.
*293 William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, Louis M. Jones, William P. Curry, Jr., Sam L. Levkowicz, Robert E. Redmann, New Orleans, for plaintiff-appellant.
Stone, Pigman, Walther, Wittmann & Hutchinson, Phillip A. Wittmann and S. Michael Henry, New Orleans, for defendant-appellee.
Blake G. Arata, City Atty., Henry W. Kinney, III, New Orleans, for defendant-appellee.
*294 Vernon V. Palmer, New Orleans, for Upper Audubon Assn. and Walter Chappell, III.
Thomas F. Jordan, New Orleans, for Uptown Civic Assn. and Donald S. Lee.
Before LEMMON, STOULIG and SCHOTT, JJ.
SCHOTT, Judge.
These appeals were taken from three separate judgments by the Attorney General of the State of Louisiana, Uptown Civic Association and Donald S. Lee (Uptown and Lee) and by Walter Chappell, III and Vera Bisso (Chappell and Bisso).
The procedural history of this litigation began on June 26, 1975, with the filing of a petition for a temporary restraining order, a preliminary injunction and a final injunction by the Attorney General to prevent defendants from proceeding with an expansion project on the Merz Memorial Zoo in the Audubon Park in the City of New Orleans. The trial judge declined to issue a temporary restraining order and assigned the preliminary injunction for a hearing on July 2. On June 30 the Audubon Park Commission (APC) and the City filed peremptory exceptions of no right and no cause of action to the Attorney General's petition. On July 1 Uptown and Lee filed a petition of intervention seeking a declaratory judgment declaring illegal defendants' activities in carrying out the zoo project, and a final injunction prohibiting them from proceeding with the project and compelling them to restore Audubon Park to its condition existing before the project began. On July 3 the trial court maintained the exceptions of no right and no cause of action filed by defendants dismissing the Attorney General's suit. The court also dismissed the petition of intervention filed by Uptown and Lee. On applications for writs to this Court, the application of the Attorney General was denied but the application of Uptown and Lee was made peremptory because of a procedural deficiency in the record in that no exceptions had been filed against their petition and the validity of their intervention had not been placed at issue before the court.
On July 22 APC and the City filed peremptory exceptions of no cause and no right of action as well as a dilatory exception of unauthorized use of summary process against the petition of Uptown and Lee. In the meantime, on July 8 Chappell and Bisso filed a separate suit for declaratory and injunctive relief against APC and the City. The rule for the preliminary injunction was originally assigned for hearing on July 15 but was apparently continued by the court until July 29. Defendants filed similar exceptions to those filed in response to the petition of intervention by Uptown and Lee.
On July 31 the trial court overruled the dilatory exception of defendants to the petition of Uptown and Lee and maintained the exception of no right of action filed by defendants to the petition of Uptown and Lee dismissing their suit. In a separate judgment on July 31 the trial court also maintained the exception of no cause of action filed by defendants to the petition of Chappell and Bisso dismissing their suit. From these judgments the Attorney General, Uptown and Lee, and Chappell and Bisso have appealed, and the matters have all been consolidated in this Court.
It can be seen from the foregoing that we must consider exceptions of no right of action maintained against the Attorney General, no right of action maintained against Uptown and Lee, and no cause of action maintained against the Attorney General and Chappell and Bisso. While the trial judge did not specifically pass upon the exception of no cause of action filed against Uptown and Lee it appears from a reading of his reasons for judgment that he intended to maintain the exception of no cause of action against Uptown and Lee, and in any event since the suit by Uptown and Lee contains allegations much the same as those pleaded by *295 the Attorney General and/or Chappell and Bisso we are inclined to consider the exception of no cause of action as we are authorized to do under LSA-C.C.P. Art. 927 even though the judgment appealed from did not specifically maintain that exception as against Uptown and Lee.

THE EXCEPTION OF NO RIGHT OF ACTION AGAINST THE ATTORNEY GENERAL
The trial court gave the following reasons for judgment on this aspect of the case:
"This Court takes the position that the Attorney General of the State of Louisiana does not have the right to challenge the acts and actions of the Audubon Park Commission when that body is discharging, as the Court feels it is doing here, its legislative mandate.
"See Act 191 of 1914 and Louisiana Const. of 1974 arts. 6 sections 4-6. cf. article XIV, section 22 of the La.Const. of 1921, as amended by act 551 of 1950.
"To permit the plaintiff to obtain the relief it seeks would, to this court's way of thinking, amount to an unconstitutional repeal of the Home Rule Charter of the City of New Orleans."
Art. 4, § 8, of the Constitution of 1974 contains the following grant of authority to the Attorney General:
"As necessary for the assertion of protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding;"
As will be seen hereafter defendants rely on Act 191 of 1914 and Act 492 of 1958 for their principal authority to proceed with the project and to support their exceptions of no cause of action to the various petitions filed against them. There is no question but that APC is an agency of the City and not of the State, State Civil Service Commission v. Audubon Park Commission, 99 So.2d 920 (La.App. 4th Cir. 1958), but Audubon Park is owned by the State and not by the City, City of New Orleans v. Board of Commissioners, 148 So.2d 782 (La.App. 4th Cir. 1962), and when the legislature by the passage of the two acts cited above saw fit to place the administration and management of its property, the park, in the City and APC it did so within the limitations and under the conditions specified in those acts. Since the Attorney General's petition contains allegations that defendants have exceeded and are exceeding their own authority it follows that he does have the right under the constitutional provision cited to bring this action to enjoin the defendants from doing so. We have therefore concluded that the trial judge erred in maintaining defendants' exception of no right of action to the petition of the Attorney General.

THE EXCEPTION OF NO RIGHT OF ACTION TO THE PETITION OF UPTOWN AND LEE
In support of their exception of no right of action to the petition to Uptown and Lee defendants argue that Uptown and Lee are estopped from requesting injunctive relief because they have observed the construction under way at Audubon Park for several months and that the zoo expansion project has been public knowledge since the summer of 1973. This argument does not support an exception of no right of action. It might support an affirmative defense based on evidence which would have to be taken at a trial. Whether such evidence would support estoppel or perhaps laches is not before us and we express no opinion on the validity of such a defense. We hold only that the argument does not provide a legal basis for an exception of no right of action.
We do not gather from defendants' brief or argument that they seriously question that Uptown and Lee have an interest in bringing their suit and therefore have a *296 right of action. The allegations are that Uptown Civic Association is made up of property owners, voters and tax payers living in the general vicinity of Audubon Park in the City of New Orleans and that Lee is a resident, voter and tax payer of the City, residing in the general vicinity of Audubon Park. We therefore conclude that the exception of no right of action as to the petition of intervention by Uptown and Lee should have been overruled.
While the trial judge specifically maintained the exception of no right of action it appears that he intended to maintain the exception of no cause of action. His reasons for judgment were in large measure based upon the action which had already been taken in maintaining the exception of no cause of action as against the suit by the Attorney General. Furthermore, in giving reasons for judgment maintaining the exception of no cause of action against Chappell and Bisso on the same day as the judgment against Uptown and Lee, the trial judge stated that the exceptions should be disposed of the same way in both cases, suggesting that there was simply a technical error in mislabeling the exception he was maintaining against Uptown and Lee.
Finally, it follows that if the exceptions of no cause of action filed against the Attorney General and Chappell and Bisso have merit they likewise would apply against the petition of Uptown and Lee. Therefore, in reversing the trial court to the extent that an exception of no right of action was maintained against the petition of Uptown and Lee, we will consider the judgment as one which also maintained the exception of no cause of action.

EXCEPTIONS OF NO CAUSE OF ACTION
At the outset of this discussion we should recall the nature and purpose of the exception of no cause of action so as to dispel any possible misunderstanding about the result we may reach. We are not now concerned with the merits of this controversy but we accept as true the well pleaded allegations of the petition together with any documents which were attached and made part thereof. We may not consider assertions of fact in the answers filed by defendants or to facts referred to by the various counsel in their briefs or arguments before the trial court or in this Court which were not pleaded in the petitions. Our inquiry is whether as a matter of law plaintiffs are entitled to the relief they seek if they can prove all of the facts they allege in their petitions. If they are, then plaintiffs have stated a cause of action and are entitled to their day in court. LSA-C.C.P. Art. 931, Borenstein v. Joseph Fein Caterers, Inc., 308 So.2d 396 (La.App. 4th Cir. 1975).
In his petition the Attorney General alleged that APC through the City has entered into various contracts with architects and contractors to bring about a major expansion of the zoo; pursuant to a contract which is attached to the petition, defendants have employed architects to further an expansion plan and have entered into four separate contracts between January, 1974, and January, 1975, to spend approximately $1,240,000 for the renovation of the entrance and expansion of the zoo, for the renovation of the tropical bird house, for the renovation and expansion of the zoo fences and for the relocation of the rides concession. The "master plan" annexed to the petition standing alone does not provide one with background information as to what was located in this area before the plan was laid, what part of the total of Audubon Park this plan encompasses, exactly what kind of activities were available in the area before the plan was drawn and to what extent such activities must be discontinued after the plan is completed. However, plaintiff alleges as follows:

"8.
The effect of the performance of these contracts and the implementation of the *297 plans of the Audubon Park COMMISSION FOR THE EXPANSION OF THE Merz Memorial Zoo will be to:
A. Increase the size of the zoo more than three times its former size;
B. enclose behind fences large areas of green, open space, which the public has used freely for many years;
C. change picnic areas and open space into animal pens;
D. charge the public a fee for admission into an area formerly accessible without charge;
E. change baseball and soccer fields into paved, commercial parking lots;
F. close three oak tree lined, paved drives in the park, formerly open to the public for many years; and to
G. change a small state park into a municipal tourist attraction.

"9.
The performance of these contracts and the implementation of the Zoo expansion plans change the character and nature of a substantial portion of the Park, and change the character and nature of the entire Park. The performance of these contracts and the implementation of these plans constitute acts of ownership, which a general agent may not perform."
In deciding whether the petition states a cause of action the problem bifurcates: 1) Are these well pleaded allegations, that is, does the Attorney General allege facts or does he allege conclusions? 2) If these are well pleaded allegations of fact, is the legislative grant of authority to defendants so comprehensive that they are immune from the Attorney General's attack as a matter of law?
With respect to the first question, it cannot be disputed that paragraph 8 contains factual allegations except for sub-paragraph G, which does seem to be a conclusion. But the other allegations of that paragraph do not suggest what may be the impact of these changes on the park as it existed before the plan is put into effect. We are not told the original size of the zoo so that we do not know how much of the park will be affected when the zoo is increased three times its former size. We do not know what percentage of the large areas of green open space originally existing will be enclosed. The same can be said for the change of picnic areas, the animal pens, the charging of fees for the use of areas formerly free or the conversion of athletic fields to commercial parking lots. However, the allegation is made in paragraph 9 that this project will change the character and nature not only of a substantial portion of the park but also the entire park. The query is whether that is an allegation of fact or a conclusion, or is it necessary for the Attorney General to spell out in minute detail all of those elements which comprised the character and nature of the park before the project as compared to those things after the project is implemented and put into effect.
The American Heritage Dictionary of the English Language, 1973 edition, defines "character" as the combination of qualities or features that distinguishes one thing from another and "nature" as the intrinsic characteristics and qualities of a thing. It seems obvious that if changes are of such a degree and are so drastic that the thing loses its character and nature it is no longer the same thing at all, but has taken on a different identity. To plead that the zoo expansion plan would change the character and nature of a substantial part or of all of the park is to plead that what was once a park will no longer be a park. From this we conclude that these are well pleaded, or at least sufficiently pleaded, allegations to overcome an exception of no cause of action.
The next question is one of law and requires a consideration of the authority *298 given to the defendants by the legislature. Act 191 of 1914 established the Audubon Park Commission and provided as follows:
"Section 2. Be it further enacted, etc., That the said Audubon Park Commission shall be, and it hereby is, vested with the control and management of the park in the City of New Orleans, known as the `Audubon Park.'
"Section 3. Be it further enacted, etc., That the duties of the said Audubon Park Commission shall be to take charge and supervision of the said park, and to preserve it for public recreation and use as a place of public resort and pleasure, and such Commission shall have full charge of the control and management, repair, maintenance, development and improvement of the said park."
Act 492 of 1958 provided as follows:
"Section 1. That the Audubon Park Commission for the City of New Orleans and the New Orleans City Park Improvement Association are hereby vested with authority to establish, maintain, operate and control park recreational and entertainment facilities and activities in the parks in the City of New Orleans under their respective management and control.
"Section 2. That the Audubon Park Commission for the City of New Orleans and the New Orleans City Park Improvement Association are hereby vested with authority to enter into contracts with private individuals, firms or corporations for the establishment, maintenance and operation of park recreational and entertainment facilities and activities in the parks in the City of New Orleans under their respective jurisdictions, and to charge and collect from said contracting parties rentals for the use of said park property.
* * * * * *
"Section 5. That nothing contained in this Act shall be construed to affect, or change, in any manner whatsoever, the rights, powers and authority granted to Audubon Park Commission for the City of New Orleans by Act 191 of 1914, or any other act of the Legislature, to manage and control the park in the City of New Orleans known as the `Audubon Park'."
We recognize that these acts contain broad grants of authority to APC but reason dictates that any authority it exercises must be within the limits of preserving the character and nature of the park. If the zoo project is such that the park's character and nature as such will be lost the underlying purpose behind the cited acts will be defeated.
In oral argument to this Court both sides contended that it is a question of degree as to whether this project will change the character and nature of the park to the extent that the Attorney General is entitled to injunctive relief, and we agree with this characterization. It is difficult to verbalize an effective definition of the word "park" but it seems obvious that the word is not synonymous with "zoo," and if a park which once contained a zoo becomes primarily a zoo with little or no characteristics normally associated with a park then it is no longer a park primarily but rather a zoo. We have concluded that the Attorney General has alleged this to be the result if the zoo expansion project continues and therefore he has stated a cause of action and is entitled to have his day in court.
The Attorney General has also alleged that the implementation of this project will "close three oak tree lined, paved drives in the park, formerly open to the public for many years." As to this allegation the Attorney General relies upon LSA-R.S. 48:512 which provides as follows:
"No person shall close, obstruct, or change any legal road except upon order *299 of the governing authority of the parish."
We agree with defendants that the naked allegation of the Attorney General does not state a cause of action because the fact that these drives were formerly open to the public for many years does not bring them under the definition of a public road as provided by R.S. 48:491:
"All roads or streets in this state that are opened, laid out or appointed by virtue of any act of the legislature or by virtue of an order of any parish governing authority in any parish, or any municipal governing authority in any municipality, or which have been or are hereafter kept up, maintained or worked for a period of three years by authority of any parish governing authority in its parish or by authority of any municipal governing authority in its municipality shall be public roads or streets as the case may be. . . ."
However, in the light of the allegations on this point by Uptown and Lee, as well as Chappell and Bisso, which we will discuss hereafter the Attorney General's petition shall not be dismissed but rather the judgment sustaining the exception shall be amended so as to permit the Attorney General to amend his petition so as to state a cause of action, C.C.P. Art. 934. This he can do by tracking the petition of the other plaintiffs.
In their petition of intervention, Uptown and Lee incorporated paragraph 8 of the Attorney General's petition in their own petition by reference. But they also alleged as follows:

"9.
Intervenors aver that Natatorium Drive, East Drive and River Drive are public roads, or streets within the meaning and intendment of Article 48:491 which have been, prior to the initiation of the plan for the expansion of the Audubon Park Zoo, open to the free passage of the public for a period in excess of ten years and have been maintained or worked by the governing authority of Orleans Parish or by the City of New Orleans in excess of three years and no authority has been granted for the closing of said roads which have been closed to the free ingress, egress and passage of the public contrary to law and without proper authority and a mandatory injunction should issue herein ordering, directing and compelling defendants to open said roads to the free ingress and egress of the citizens of the state. . . ."
Chappell and Bisso included the following allegation in their petition:

"11.
In addition to the foregoing, implementation of the defendants' Master Plan has caused and brought about the closing of three paved streets or roads within Audubon Park. These streets or roads were built decades ago at public expense and have been maintained at public expense for more than three years by either the City of New Orleans or its purported agent the Audubon Park Commission. These streets have not been abandoned by lack of public use but constitute an essential and frequently used means by which the public and the plaintiffs have been able to move within and gain access to recreation areas within Audubon Park. Accordingly, the abovementioned roads and streets fall within the definition of `public roads or streets' set forth by LSA-R.S. 48:491 and also fall within the prohibition of LSA-R.S. 48:512 which declares:
`No person shall close, obstruct or change any legal road except upon order of the governing authority of the parish.'"
These quoted allegations plainly state a cause of action. They allege facts which make the subject roads public as defined *300 by R.S. 48:491 and they recite that these roads have been closed in violation of R.S. 48:512. Defendants' argument that APC has been delegated the authority to close these public roads by the governing authority of the Parish is without any legal basis. They cite no authority for the proposition that this power can be delegated and even assuming that it can it would be a matter of affirmative defense for defendants to allege and prove at trial. It cannot be speculated upon in our consideration of an exception of no cause of action.
Our discussion of defendants' exception of no cause of action with respect to the Attorney General's petition relative to the details of the zoo expansion project and its effect in changing the character and nature of the park applies to the petitions filed by Uptown and Lee and Chappell and Bisso, since their petitions are in this respect substantially the same as the petition of the Attorney General.
In their petition Uptown and Lee also included the following allegations:
"Article 191 of 1914 which created the defendant, the Audubon Park Commission, did not grant to the Audubon Park Commission authority to operate a zoo. By virtue of the provisions of Article 10, § 10, of the 1921 Constitution of the State of Louisiana, the City of New Orleans was given the power to levy a special tax for the purpose of establishing and maintaining a zoological garden in the city and subsequent thereto there was established in Audubon Park a small animal exhibit. However, by Act 81 of 1928 there was established a zoological board of control to administer the proceeds of a special tax for the purpose of establishing and maintaining a zoological garden at some place in the City of New Orleans which act provided for the repeal of any laws in conflict with it and clearly establishes that whatever may be the status of the Valentine Merz Memorial Zoo situated on 10.4 acres of Audubon Park that the Audubon Park Commission of said zoo and that its action in entering into contracts for said purpose and its action in pursuance of its plan for the expansion of the Audubon Park Zoo are ultra vires illegal and of no force and effect and that the Audubon Park Commission should be permanently enjoined from carrying out said plan and from expending public or private funds thereon.

"8.
The establishment of the Merz Memorial Zoo, which did not charge admission, did not have the legal effect upon the status of the Audubon Park as a public common thing to convert it from that dedicated use as does the works presently being carried out by the Audubon Park Commission and it was commensurate with that public common dedication even though the Audubon Park Commission did not have the power at the time of its construction to operate a zoo in Audubon Park in view of the effect of Act 81 of 1928. . . ."
Similarly Chappell and Bisso alleged as follows:

"8.
In addition to the foregoing, neither defendant Audubon Park Commission nor the defendant City of New Orleans has the authority to establish a zoological garden in Audubon Park. The sole and exclusive agency empowered by law to select a site and to establish and maintain a zoological garden in the City of New Orleans is the Zoological Board of Control referred to in Act 81 of 1928.

"9.
Furthermore the Zoological Board of Control is the sole agency authorized by Act 81 of 1928 to administer the proceeds of the special tax levy of 1/5 of one mill pursuant to Article X, § 10 of *301 the Louisiana Constitution of 1921 for purposes of establishing a zoological garden in New Orleans. Nevertheless, despite the mandate of Act 81 of 1928, the defendant City of New Orleans has, since 1973, annually turned over the proceeds of the above special tax to the defendant Audubon Park Commission.

"10.
Thus all actions taken by the defendants, as contrasted to the lawfully empowered Zoological Board of Control, to establish and maintain a zoological garden in Audubon Park through implementation of the aforesaid Master Plan and utilization of the special tax levy are ultra vires, null and void. Accordingly, this Court should declare such actions null and should preliminarily and permanently enjoin the defendants from further unlawful construction and expenditure of public and special tax funds on this project."
Plaintiffs and intervenors contend that by the passage of Act 81 of 1928 the legislature restricted the authority to establish, maintain and operate a zoo, and levy taxes for the support thereof to a Zoological Board of Control established by the act. They contend that APC never had the authority to establish a zoo in the first instance, but without attempting to interfere with the zoo as it existed before the expansion project began they contend that the expansion and implementation of the present project constitutes an illegal intrusion of APC on functions which are reserved by the legislature to the Zoological Board of Control.
Act 81 of 1928 got its authority from Article 10, § 10, of the Constitution of 1921, the pertinent part of which was as follows:
". . . The City of New Orleans may further levy a special tax not to exceed one-fifth of one mill on the dollar of its assessed valuation, for the purpose of establishing and maintaining a zoological garden in that city, provided the rate, purpose and duration of such special tax shall have been submitted to the resident property taxpayers qualified to vote in said city, and a majority of those voting, in number and amount, shall have voted in favor thereof."
While the legislature may have originally intended by Act 81 of 1928 that zoo operations would be the exclusive function of the Zoological Board of Control that intention was expressly changed by the passage of Act 434 of 1970, R.S. 39:801, which provides as follows:
". . . The city of New Orleans may further levy a special tax not to exceed one-fifth of one mill on the dollar of its assessed valuation, for the purpose of establishing and maintaining a zoological garden in that city, provided the rate, purpose and duration of such special tax shall have been submitted to the voters qualified to vote in said city, and a majority of those voting shall have voted in favor thereof."
Plaintiffs contend that the only purpose for the passage of the last quoted act was to eliminate the constitutionally objectionable features of Art. 10, § 10, of the Constitution of 1921, which restricted the election to property holders. They say that it was not the intention of the legislature to change the authority and functions of the Zoological Board of Control but only to provide that the election would be conducted by all registered voters of the city.
We do not accept this narrow interpretation of the intention of the legislature. Act 434 of 1970 was passed against a backdrop of the New Orleans Home Rule Charter, the de facto existence of the zoo in Audubon Park, and the statutory existence of Act 81 of 1928. Had the legislature intended to breathe life into the Zoological Board of Control after 42 years of dormancy they could and should have done so. We are not persuaded by the fact that *302 the legislature has not specifically repealed Act 81 of 1928. We perceive that the legislature recognized the anomaly of the existence of a board which is nowhere mentioned in the Home Rule Charter, and the necessity for updating the law so as to place control over the zoo where it obviously belongs, namely, in the City of New Orleans and any agency thereof which the City sees fit to delegate. On this point, we agree with the trial court that the plaintiffs state no cause of action.[1]
Finally, Uptown and Lee have incorporated in their petition still another paragraph which they contend states a cause of action as follows:

"5.
Intervenors further aver that the defendant, the City of New Orleans, employed the architectural firm of Cimini & Meric & Assoc., Inc. at an estimated sum of $300,000.00 to prepare with its representatives a plan for the expansion of the Merz Memorial Zoo in Audubon Park and such plan was developed and executed thereof was begun without compliance with the public hearing provisions of the Home Rule Charter of the City of New Orleans and is continuing without the approval required under said charter which conduct has done irreparable harm and damage to intervenors and should be declared illegal and permanently enjoined."
They rely on provisions of the Home Rule Charter of the City of New Orleans, Sec. 5-507 in particular, which provides as follows:
"Prior to making recommendations on any zoning ordinance, or amendment thereto; prior to adopting regulations governing the subdivision of land; and prior to adopting the Master Plan, or part thereof; the Commission shall hold a public hearing thereon at which interested persons shall be afforded a reasonable opportunity to be heard. Notice of the time and place of the hearing shall be published at least three times in the official journal."
By reference to the quoted section the requirements for public notice and public hearing apply to specific undertakings, namely, any zoning ordinance, subdivision regulations and the adoption of "the Master Plan." There are no allegations in the petition which equate defendants' zoo project with those undertakings. It may be that the zoo expansion plan has some effect on zoning or "the Master Plan" discussed in the Home Rule Charter since it does appear from the copy of the Zoo Expansion Plan, made a part of plaintiffs' petition, that certain aspects of it are located along Magazine Street and other streets of the City of New Orleans, which may not be a part of Audubon Park. But plaintiffs have not made any facutal allegations which would qualify as "well pleaded" allegations for purposes of our overruling the exception of no cause of action on this aspect of the case. However, in maintaining the exception plaintiffs should be given an opportunity to amend this part of their petition in accordance with C.C.P. Art. 934.

DECREE
Accordingly, it is ordered, adjudged and decreed that the judgment in favor of Audubon Park Commission and the City of New Orleans maintaining their exceptions of no right and no cause of action and dismissing the suit of William J. Guste, Jr. as Attorney General of the State of Louisiana, is reversed and set aside. The exception of no right of action is overruled without qualification. The exception of no *303 cause of action is overruled considering the allegations made by the Attorney General in paragraphs 8A. through E. and 9. As to paragraph 8F. the exception of no cause of action is maintained subject to the Attorney General's right to amend his petition on this point pursuant to LSA-C.C.P. Art. 934.
It is further ordered, adjudged and decreed that the judgment in favor of the Audubon Park Commission and the City of New Orleans, maintaining their exception of no right of action and dismissing the petition in intervention of Uptown Civic Association and Donald S. Lee, is reversed and the exception of no right of action is overruled. Considering that the trial court intended to maintain an exception of no cause of action as against the intervenors, the judgment is reversed and the exception is overruled considering those allegations which are the same as or expansions of paragraphs 8A. through E. and 9 of the Attorney General's petition and considering paragraph 9 of intervenors' petition. The exception of no cause of action is maintained as to paragraph 5 of intervenors' petition subject to their right to amend their petition on this point pursuant to LSA-C.C.P. Art. 934. The exception of no cause of action is maintained as to those portions of paragraphs 7 and 8 of intervenors' petition having reference to Act 81 of 1928 and its provisions.
It is further ordered, adjudged and decreed that the judgment in favor of Audubon Park Commission and the City of New Orleans maintaining their exception of no cause of action and dismissing the suit of plaintiffs Walter Chappell, III, and Vera Bisso, is reversed and the exception of no cause of action is overruled provided that the exception is maintained only with respect to paragraphs 8, 9 and 10 of their petition having to do with Act 81 of 1928 and its provisions.
It is further ordered that this case be remanded to the District Court for further proceedings consistent with the views we have expressed herein.
Reversed and remanded.
STOULIG, J., concurs with written reasons.
STOULIG, Judge (concurring).
I concur in the result. Upon the trial court's determination that the plaintiffs' petitions did not state a cause of action, the petitioners, under C.C.P. art. 934, are entitled as a matter of right to amend their pleadings to set forth a cause of action, if any they have. The failure to afford plaintiffs the opportunity to amend before dismissing their suits is reversible error and these matters must be remanded in order that the provisions of C.C.P. art. 934 may be satisfied.
NOTES
[1] Section 4 of Act 434 of 1970 provided that the Act's provisions would become operable only if laws restricting bond elections to property holders were declared unconstitutional. This occurred in Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969). See Cox v. City of New Orleans, 250 So.2d 47 (La.App. 4th Cir. 1971).