| | | |
|---|---|---|
| **PATRICIA CLAVERIE** | * | **NO. 2023-CA-0331** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **IAM TUCKER, INTEGRATED** | * | |
| **LOGISTICAL SUPPORT, INC.** | | **FOURTH CIRCUIT** |
| **AND THE SEWERAGE AND** | * | |
| **WATER BOARD OF NEW** | | **STATE OF LOUISIANA** |
| **ORLEANS** | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-08443, DIVISION "F-14"
Honorable Jennifer M Medley, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge
Tiffany Gautier Chase)

Brett J. Prendergast
4603 South Carrollton Avenue
New Orleans, LA 70119

      COUNSEL FOR PLAINTIFF/APPELLANT

Michelle D. Craig
TRANSCENDENT LAW GROUP
3726 Canal Street, Suite A
New Orleans, LA 70119

      COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**
**NOVMEBR 27, 2023**

This case arises out of a pre-employment dispute. Appellant, Patricia Claverie ("Ms. Claverie"), seeks review of the district court's February 8, 2023 judgment, which sustained the exception of no cause of action (the "exception") filed by Appellee, Sewerage and Water Board of New Orleans (the "SWBNO"), and found that Ms. Claverie failed to state a cause of action for detrimental reliance. For the reasons that follow, we reverse the district court's judgment and remand this matter for further proceedings in accordance with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

On October 18, 2021, Ms. Claverie filed a petition for damages (the "petition"), against Iam Tucker ("Ms. Tucker"), Integrated Logistical Support, Inc. ("ILSI"), which is owned by Ms. Tucker, and the SWBNO, asserting defamation claims against Ms. Tucker and ILSI and detrimental reliance claims against the SWBNO.[1] Ms. Claverie alleged that on July 27, 2020, she applied for an Engineer Intern II position with the SWBNO, interviewed with the SWBNO on September 17, 2020, and shortly thereafter, received an employment offer with a start date of

---

[1] This appeal is limited to the exception of no cause of action filed by the SWBNO. However, for context, we will briefly discuss the factual allegations asserted against all defendants, as they are intertwined.

1

November 1, 2020. Prior to receiving this offer, Ms. Claverie was an employee of ILSI. Ms. Claverie avers that on October 13, 2020, after receiving her employment offer from SWBNO, she submitted a formal letter of resignation to ILSI advising Ms. Tucker that she had accepted a job offer with another employer and that her last day would be October 30, 2020.

Ms. Claverie contends that on October 19, 2020, Ms. Tucker falsely accused her of stealing ILSI's physical files and deleting electronically stored files from ILSI's computer server, and terminated her employment with ILSI. On that same day, Ms. Tucker filed a formal report with the New Orleans Police Department (the "NOPD"), alleging that Ms. Claverie stole ILSI's work product and intellectual property, which led to a warrant being issued for Ms. Claverie's arrest on November 6, 2020. After learning of the existence of a warrant for her arrest, in January 2021 Ms. Claverie turned herself into the NOPD. On April 19, 2021, the Orleans Parish District Attorney (the "DA") refused the theft charges.

Ms. Claverie maintains that along with filing a report with the NOPD, Ms. Tucker filed a complaint with the SWBNO to report Ms. Claverie's alleged theft of ILSI's property, which caused the SWBNO's security department to open an investigation into the allegations. Ms. Claverie claims that the SWBNO's investigation was "rife with errors," and following the investigation the SWBNO failed to make good on its representation of future employment, which she detrimentally relied upon by resigning her previous job with ILSI. She further claims that she lost wages because of her reliance on the SWBNO's promise of employment.

The SWBNO filed an answer on February 22, 2022, which included a no cause of action defense. On May 13, 2022, the SWBNO filed a memorandum in

support of its exception, asserting that Ms. Claverie had failed to allege facts sufficient to support her claim for detrimental reliance. Ms. Claverie opposed the exception, and the matter came for hearing on January 27, 2023. Following oral argument of counsel, the district court granted the SWBNO's exception. A partial final judgment was signed on February 8, 2023, sustaining the exception and ordering the dismissal of Ms. Claverie's claims against the SWBNO. This timely appeal followed.

## DISCUSSION

In her appeal to this Court, Ms. Claverie asserts the following two assignments of error: (1) the district court erred in finding that her petition failed to state a cause of action for detrimental reliance against the SWBNO; and (2) the district court erred in determining that her failure to obtain permanent civil service status with the SWBNO precluded her cause of action for detrimental reliance. Before turning to the merits of her assigned errors, we will first review the relevant law and standard of review applicable to these issues.

"An exception is a means of defense, other than a denial or avoidance of the demand, used by the defendant, whether in the principal or an incidental action, to retard, dismiss, or defeat the demand brought against him." La. C.C.P. art. 921. "An exception of no cause of action is a peremptory exception." La. C.C.P. art. 927(A). "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923. "On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." La. C.C.P. art. 931. However,

3

"[n]o evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." La. C.C.P. art. 931.

"An exception of no cause of action tests 'the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading.'" *Green v. Garcia-Victor*, 17-0695, p. 4 (La. App. 4 Cir. 5/16/18), 248 So.3d 449, 453 (quoting *Moreno v. Entergy Corp.*, 10-2281, p. 3 (La. 2/18/11), 62 So.3d 704, 706). "In deciding an exception of no cause of action a court can consider only the petition, any amendments to the petition, and any documents attached to the petition." *2400 Canal, LLC v. Bd. Of Sup'rs of Louisiana State Univ. Agr. & Mech. Coll.*, 12-0220, p. 7 (La. App. 4 Cir. 11/7/12), 105 So.3d 819, 825 (citing *B-G & G Investors VI, L.L.C. v. Thibaut HG Corp.*, 08-0093, pp. 4-5 (La. App. 4 Cir. 5/21/08), 985 So.2d 837, 841). "A court cannot consider assertions of fact referred to by the various counsel in their briefs that are not pled in the petition." *Id.* (citing *State ex rel. Guste v. Audubon Park Commission*, 320 So.2d 291 (La. App. 4th Cir.1975)). "The grant of the exception of no cause of action is proper when, assuming all well pleaded factual allegations of the petition and any annexed documents are true, the plaintiff is not entitled to the relief he seeks as a matter of law; any doubt must be resolved in the plaintiffs' favor.'" *Id.* (citing *Kuebler v. Martin*, 578 So.2d 113 (La.1991)). "Louisiana has chosen a system of fact pleading." *831 Bartholomew Investments-A, L.L.C. v. Margulis*, 08-0559, p. 9 (La. App. 4 Cir. 9/2/09), 20 So.3d 532, 538 (first citing La. C.C.P. art. 854 cmt. (a); and then citing *Montalvo v. Sondes*, 93-2813, p. 6 (La.5/23/94), 637 So.2d 127, 131). "Therefore, it is not necessary for a plaintiff to plead the theory of his case in the petition." *Id.* at pp. 9-10, 20 So.3d at 538 (citing *Kizer v. Lilly*, 471 So.2d 716, 719 (La.1985)). "However, the mere conclusions of the plaintiff unsupported by

facts does [sic] not set forth a cause of action." *Id.* at p. 10, 20 So.3d at 538 (citing *Montalvo* at p. 6, 637 So.2d at 131) (alteration in the original).

"Appellate courts review rulings on exceptions of no cause of action using the *de novo* standard of review because exceptions of no cause of action present legal questions." *Henderson v. State Farm Mut. Auto. Ins. Co.*, 21-0654, pp. 4-5 (La. App. 4 Cir. 12/17/21), 335 So.3d 349, 353 (citing *Tickle v. Ballay*, 18-0408, p. 4 (La. App. 4 Cir. 11/14/18), 259 So.3d 435, 438). "The burden of demonstrating that the petition states no cause of action is upon the mover." *831 Bartholomew Investments-A, L.L.C.*, 08-0559, p. 10, 20 So.3d at 538 (citing *City of New Orleans v. Board of Com'rs of Orleans Levee Dist.*, 93-0690, p. 28 (La. 7/5/94), 640 So.2d 237, 253).

> The doctrine of detrimental reliance, codified at La. C.C. art. 1967, provides:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

"The doctrine of detrimental reliance is 'designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence.'" *Suire v. Lafayette City-Par. Consol. Gov't*, 04-1459, p. 31 (La. 4/12/05), 907 So.2d 37, 59 (quoting *Babkow v. Morris Bart, P.L.C.*, 1998-0256 (La. App. 4 Cir. 12/16/98), 726 So.2d 423, 427). The Louisiana Supreme Court has previously set forth the elements a party must prove, by a preponderance of the evidence, in order to establish a detrimental reliance claim: "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of reliance." *Id.* (citing *Lakeland Anesthesia,*

*Inc. v. United Healthcare of La., Inc.*, 03-1662, p. 18 (La. App. 4 Cir. 3/17/04), 871 So.2d 380, 393). As to the third element—a change in position to one's detriment because of reliance—"to establish reliance to [her] detriment, [the plaintiff] need only show that [she] suffered damages not adequately compensated by the defendant." *Id.* at p. 32, 907 So.2d at 59. "Thus, the focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment." *Id.* at pp. 31-32, 907 So.2d 37, 59 (citing *Morris v. People's Bank & Trust Co. of Natchitoches*, 580 So.2d 1029, 1036 (La. App. 3d Cir. 1991)).

With these precepts in mind, we now turn to the merits of Ms. Claverie's assigned errors.

*Detrimental Reliance*

Ms. Claverie argues that the allegations contained in her petition allege facts to satisfy each element of detrimental reliance set forth in *Suire*. First, Ms. Claverie contends that the representation by conduct or word element is satisfied by facts alleged in Paragraph 3 of her petition, which states:

> 3.
> On July 27, 2020, Ms. Claverie applied via the New Orleans Civil Service Commission's website for an open Engineer Intern II position with the Board. Steven Giang and Mubashir Maqbool with the Board's Network Engineering Department interviewed Ms. Claverie on September 17, 2020. On October 6, 2020, Ms. Claverie received an offer letter from Ms. Terri Sippio with the Board. Ms. Claverie accepted this offer. Ms. Claverie was to start her employment with the Board on November 1, 2020.

Next, Ms. Claverie urges that she alleged sufficient facts to satisfy the second required element of detrimental reliance—justifiable reliance—in Paragraph 5 of her petition, which provides:

> 5.
> Relying on the job offer made by the Board and to insure a smooth transition of her job duties at ILSI, on October 13, 2020, Ms. Claverie advised Tucker of her intention to start new employment and that her last day would be October 30, 2020. Although Ms. Claverie did not advise Tucker that her new employer was the Sewerage and Water Board, Tucker was aware of this fact and tried to convince Ms. Claverie not to go to work for the Board. Ms. Claverie explained to Tucker that she believed that the new job was best for her because of the benefits offered. Ms. Claverie submitted a formal letter of resignation that same day. Ms. Claverie would not have resigned from ILSI but for the representation of the Board's employees that she would have a job with the Board.

Finally, Ms. Claverie contends that sufficient facts are alleged in Paragraphs 9 and 11 of her petition to satisfy the third element for a claim for detrimental reliance—that she prove that she had a detrimental change in position because of her alleged reliance. Paragraphs 9 and 11 of her petition states, as follows:

> 9.
> Ultimately, the Board failed to make good on its promise of a job for Mr. Claverie and never hired her for the position for which she had resigned her previous job with ILSI. On information and belief, this failure was the result of the false claims made by Tucker. For whatever reason, the result was that Ms. Claverie was without full time employment for a number of months.
>
> *     *     *
>
> 11.
> The Board is also liable for damages under the theory of detrimental reliance since Ms. Claverie resigned from her job as a result of the representations of a future job made by Board employees.

Ms. Claverie posits that these factual allegations state a valid cause of action for detrimental reliance.

7

In opposition, the SWBNO does not dispute that it offered Ms. Claverie employment and that she accepted that employment. Rather, the SWBNO argues that Ms. Claverie did not justifiably rely on any promise made by the SWBNO because she failed to complete any of the prerequisites in furtherance of attaining her position. To support this argument, the SWBNO cites to the Rules of the Civil Service Commission, City of New Orleans (the "Civil Service Rules"). However, because the Civil Service Rules were not attached to Ms. Claverie's petition, they cannot be considered by this Court on an exception of no cause of action. *See Green*, 17-0695, p. 5, 248 So.3d at 453 (noting that for exceptions of no cause of action, appellate courts can only review "the petition, any amendments to the petition, and any documents attached to the petition" (quoting *2400 Canal, LLC*, 12-0220, p. 7, 105 So.3d at 825)).

The SWBNO next argues, as it did in the district court, that this Court should follow the precedent set out in *May v. Harris Mgmt. Corp.*, wherein the appellate court held "that it is unreasonable as a matter of law to rely on an offer of at-will employment, just as it is patently unreasonable to rely on the permanency of at-will employment once it begins." *May v. Harris Mgmt. Corp.*, 04-2657, p. 13 (La. App. 1 Cir. 12/22/05), 928 So.2d 140, 148. In *May*, the plaintiff filed suit, alleging detrimental reliance against her prospective employer after they withdrew their employment offer despite her completing several employment documents. The appellate court concluded that the plaintiff had failed to *prove* all of the elements for detrimental reliance because her prospective employer would not have been responsible for any of the plaintiff's damages under the at-will-employment doctrine. However, we find that the SWBNO's reliance on *May* is misplaced. *May* was decided on a motion for summary judgment, which requires

8

proof. In the case *sub judice*, the only issue before this Court is whether Ms. Claverie has stated a valid cause of action for detrimental reliance.

Our review of the petition reveals Ms. Claverie alleged that she was offered and accepted employment with the SWBNO; in reliance on the SWBNO's promise of employment, she submitted a formal letter of resignation to ILSI; and she was left unemployed for several months after the SWBNO failed to make good on their promise. Accepting Ms. Claverie's petition as truthful, we find that she has alleged sufficient facts to satisfy each element to support her cause of action for detrimental reliance.[2]

*Permanent Civil Service Status*

In her second assignment of error, Ms. Claverie contends the district court erred in determining that her failure to obtain permanent civil service status with the SWBNO precluded her cause of action for detrimental reliance. Having determined that Ms. Claverie stated a cause of action against the SWBNO for detrimental reliance, we will pretermit discussion of this assigned error.

**CONCLUSION**

For the foregoing reasons, we find that Ms. Claverie sufficiently alleged facts to support her claim of detrimental reliance against the SWBNO; we reverse the district court's judgment, which sustained the SWBNO's exception of no cause of action; and we remand this case to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

---

[2] *See Bains v. Young Men's Christian Ass'n of Greater New Orleans*, 06-1423, pp. 9-10 (La. App. 4 Cir. 10/3/07), 969 So.2d 646, 652, wherein this Court, rejecting the decision set forth in *May*, held that the plaintiff sufficiently stated a cause of action for detrimental reliance against her prospective employer for which there is a remedy under the law.